UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT RUSSELL, ) | CASE NO. C07-2000-RAJ |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, ) | RE: SOCIAL SECURITY DISABILITY |
| Commissioner of Social Security, ) | APPEAL |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Robert Russell, on behalf of his deceased brother Randall Russell, proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance (DI) benefits after hearings before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1950.[1] He completed high school with a GED and previously

---

[1] All references to "plaintiff" refer to the deceased claimant, Randall Russell. Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

worked in car sales. (AR 142, 147, 171.)

Plaintiff filed an application for DI benefits on August 22, 2003, alleging disability beginning July 1, 2002. (AR 113-15.) Plaintiff remained insured for DI benefits through March 31, 2003 and, therefore, was required to establish disability on or prior to that "date last insured" (DLI). *See* 20 C.F.R. §§ 404.131, 404.321. His application was denied at the initial level and on reconsideration, and he timely requested a hearing.

On September 16, 2005, ALJ Edward Nichols held a hearing, taking testimony from plaintiff. (AR 534-58.) On October 14, 2005, the ALJ issued a decision finding plaintiff not disabled. (AR 54-63.)

Plaintiff timely appealed. The Appeals Council vacated the ALJ's decision and remanded the case for further proceedings. (AR 65-66.) The Appeals Council directed the ALJ to evaluate a Department of Veterans Affairs Rating Decision dated August 7, 2003 and to obtain evidence from a medical expert as to the onset date of disability, if established. (AR 65.)

The ALJ held a second hearing on March 21, 2007, taking testimony from plaintiff and medical expert Dr. Will B. Nelp. (AR 559-77.) At that hearing, plaintiff amended his onset date of disability to March 24, 2003. (AR 561.) On May 22, 2007, the ALJ issued another decision finding plaintiff not disabled. (AR 28-34.)

Plaintiff again timely Appealed. The Appeals Council denied plaintiff's request for review on November 16, 2007 (AR 8-11), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since his alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's Hepatitis C, cirrhosis, and substance abuse disorder in possible remission severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria of a listed impairment. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday. With that assessment, the ALJ found plaintiff able to perform his past relevant work as a car salesman. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Finding plaintiff not disabled at step four, the ALJ did not proceed to step five.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues that the ALJ erred in rejecting the Veterans Affairs' (VA) disability finding, in accepting the opinions of a nonexamining testifying physician over the opinions of two treating VA doctors, in assessing his RFC, and in finding him capable for performing his past relevant work at step four. Plaintiff requests remand for an award of benefits or, alternatively, for further administrative proceedings. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons described below, the Court agrees with the Commissioner.

## VA Determination of Disability

An ALJ must ordinarily give "great weight" to a VA determination of disability. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). However, because the VA and SSA criteria for determining disability are not identical, the ALJ may give the VA rating less weight provided "he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.*

As indicated above, the Appeals Council remanded this matter, directing the ALJ to consider a VA decision dated August 7, 2003. The Appeals Council stated:

> Such is necessary because the claimant was found disabled effective June 2, 2003, the receipt date of his informal claim for non-service connected pension based on hepatitis C. The VA award relies on a hepatology clinic treatment record dated June 24, 2003, from the VAMC in Seattle. However, it is unclear whether the findings contained therein relate back to the claimant's date last insured of March 31, 2003. The Appeals Council has determined that input from a medical expert is needed.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

(AR 65.)

The ALJ utilized the services of medical expert Dr. Nelp at a second hearing. He then concluded with respect to the VA determination:

> I also find the VA decision largely irrelevant, and not entitled to any particular weight. While VA determinations are given great weight, [*McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002)], the Social Security Administration is not bound by disability determinations made by other agencies because of different rules governing the definition and assessment of disability (20 CFR 404.1504), *Wilson v. Heckler*, 761 F.2d 1383 (9th Cir. 1985)[.] Second, the VA decision found the claimant disabled, effective on June 2, 2003, *after* the period at issue. Finally, based on Dr. Nelp's testimony, which is consistent with the medical evidence and the claimant's reported activities, I find no basis to relate the VA determination back to the period before the expiration of the claimant's date last insured.

(AR 33; footnote bracketed.)

Plaintiff first asserts that the ALJ's statement that the SSA is "not bound" by the VA determination is not a persuasive, specific, and valid reason for rejecting the disability finding. He next disputes the relevance of the timing of the determination, stating that the VA determination clearly indicates that the onset date was based exclusively on the filing date of the VA disability application. (AR 118 ("The evidence shows you to be disabled due to your disability of Hepatitis C, effective the receipt date, June 2, 2003, of your informal claim for nonservice connected pension.")) Finally, plaintiff challenges the reliance on Dr. Nelp's testimony. He asserts that, while Dr. Nelp relied exclusively on the date of a April 2003 liver biopsy (*see* AR 32, 568), both of his VA treating physicians – Dr. Connie Morantes and Dr. George Ioannou – assessed the existence of his cirrhosis prior to his March 31, 2003 DLI. (AR 275 (Dr. Morantes indicated plaintiff has been diagnosed with hepatitis C and cirrhosis of the liver on a March 24, 2003 questionnaire); AR 274 (Dr. Ioannou, on March 4, 2003, found an impression of "[c]hronic

hepatitis with some stigmata of advanced disease and even cirrhosis[,]" indicated that he set plaintiff up for a livery biopsy and a test for hepatitis C, and thought treatment should be started "sooner rather than later given [his] concerns for advanced liver disease."))  Plaintiff adds that Dr. Nelp appears to have focused on the date of the cirrhosis diagnosis, without acknowledging fatigue and pain resulting from hepatitis C, which was diagnosed and treated prior to the DLI. (AR 252 (January 17, 2003 diagnosis of hepatitis C by Dr. Morantes).)

The Commissioner disputes the assertion that the VA based its determination solely on a June 2003 application date, noting that both the decision itself and a letter from the VA reference an application date of November 25, 2002.  (*See* AR 116 ("You filed an original disability claim for diabetes mellitus II, hepatitis C, and prostrate condition with urinary problems, received on November 25, 2002.  You filed an informal claim for nonservice connection pension received on June 2, 2003."); AR 121-22 ("We have made a decision on your claim received November 25, 2002."; stating monthly entitlement would began as of July 1, 2003 and that: "We awarded your benefit because you have no income from June 2, 2003."))  The Commissioner also argues that the ALJ properly relied on the testimony of Dr. Nelp.  *See*, *e.g.*, *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.") The Commissioner states that the ALJ specifically asked Dr. Nelp about plaintiff's functional abilities between March 24, 2003, his amended alleged onset date, and March 31, 2003, the DLI, and that Dr. Nelp concurred with the RFC as previously assessed by the ALJ and concluded plaintiff did not meet the requirements of a listed impairment.  (AR 564-

72.)

The ALJ may have gone too far in describing the VA decision as largely irrelevant. However, he did acknowledge the deference afforded these determinations. The VA granted and denied plaintiff's request for benefits in part, denying the 2002 request for benefits related to his service given that his hepatitis C/cirrhosis was not incurred in the line of duty and instead resulted from drug and alcohol abuse, and granting the June 2003 informal request for benefits unrelated to his service. (AR 116-19.) The VA did link the start date for benefits to the date of plaintiff's informal filing and noted his lack of income as of that date. However, the VA was presented with a request for benefits related to plaintiff's hepatitis C/cirrhosis well prior to that date. While the VA may have been limited to granting the informal request as of the date of that filing, it was not necessarily inappropriate for the ALJ to rely, in part, on the fact that the VA found plaintiff disabled after his DLI. Finally, for the reasons discussed below, the ALJ also appropriately relied on Dr. Nelp's testimony in discounting early opinions of plaintiff's treating providers and in declining to relate the VA determination back to the period prior to plaintiff's DLI.

## Physicians' Opinions

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

*Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990) and *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).) However, "the report of a nonexamining, nontreating physician need not be discounted when it 'is not contradicted by *all other evidence* in the record.'" *Andrews v. Shalala*, 53 F.3d 1035, 1041(9th Cir.1995) (quoting *Magallanes*, 881 F.2d at 752 (emphasis in original).)

"Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*, 81 F.3d at 830-34 (finding that, if doctors' opinions and plaintiff's testimony were credited as true, plaintiff's condition met a listing) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)). Crediting an opinion as a matter of law is appropriate when, taking that opinion as true, the evidence supports a finding of disability. *See*, *e.g.*, *Schneider v. Commissioner of Social Sec. Admin.,* 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ rejected is given the effect required by the federal regulations, it becomes clear that the severity of [plaintiff's] functional limitations is sufficient to meet or equal [a listing.]"); *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) (ALJ's reasoning for rejecting subjective symptom testimony, physicians' opinions, and lay testimony legally insufficient; finding record fully developed and disability finding clearly required).

However, courts retain flexibility in applying this "'crediting as true' theory." *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether plaintiff's testimony should be credited as true). As stated

by one district court: "In some cases, automatic reversal would bestow a benefits windfall upon an undeserving, able claimant." *Barbato v. Commissioner of Soc. Sec. Admin.*, 923 F. Supp. 1273, 1278 (C.D. Cal. 1996) (remanding for further proceedings where the ALJ made a good faith error, in that some of his stated reasons for rejecting a physician's opinion were legally insufficient).

Plaintiff argues that the ALJ erred in accepting the opinions of nonexamining physician Dr. Nelp over that of treating physicians Drs. Morantes and Ioannou. He maintains that the opinions of his treating physicians should be credited as a matter of law.

The ALJ assessed the medical evidence as follows:

> . . . Because the Appeals Council did not disturb my evaluation of the medical evidence before and about a year and a half after the date last insured, I will not reevaluate that evidence, particularly in light of Counsel's offering no new evidence and stating that he relied on the prior record.
>
> Pursuant to the remand order, I requested that Dr. Nelp appear as a medical expert. At the hearing, Dr. Nelp stated that he concurred with the residual functional capacity set forth in the prior October 2005 decision. In that decision, I found that the claimant, prior to the expiration of his date last insured, could perform a full range of light work. Dr. Nelp reviewed the opinion of Connie Morantes, M.D., dated the March 24, 2003 [sic]. In that opinion, Dr. Morantes opined that the claimant could lift/carry 20 pounds occasionally and five pounds frequently, stand/walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday. She stated that the claimant was capable of low stress jobs and would likely be absent from work more than three times per month. She noted that the claimant's pain, fatigue, or other symptoms would frequently interfere with his attention and concentration. Dr. Nelp discounted the opinion. First, he pointed out that Dr. Morantes did not provide narrative evidence to support her check-the-box functional assessment. Without such explanations, he stated that he had no idea of the circumstances of production, what Dr. Morantes relied on, or if she knew how much or how long the claimant could lift, carry, sit, or stand without some form of measurement. [Courts have found that check-the-box forms can be rejected if they do not contain any explanation of the bases of their conclusions. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). Cf: *Batson v. Commissioner*, 359 F.3d 1190 (9th Cir. 2004, Graber, J. dissenting). ] Second, he stated that Dr.

Morantes's assessment was not supported by the objective evidence and the claimant's reported activities. Dr. Nelp noted that the claimant did not receive an official diagnosis of cirrhosis until an April 2003 liver biopsy, after the expiration of the date last insured.[2] On review of the liver biopsy, Dr. Nelp opined that it demonstrated very minimal changes and early stages of Hepatitis C.

I accord great weight to Dr. Nelp's testimony regarding the nature and severity of the claimant's conditions. Dr. Nelp is the only medical expert who had the opportunity to review all the medical evidence for the period prior to and shortly after the expiration of the claimant's date last insured. I adopt his opinion because it is an accurate reflection of the record. I note that the April 2003 liver biopsy showed only mild interface Hepatitis (grade II), mildly enlarged fibrotic portal tracts, and mild fatty change. I also note the record shows the claimant traveled out of state on at least three occasions, which suggests a fairly high level of functioning before and after the expiration of his date last insured. See Exhibit 31F/2 (planning to stay in Arizona for two months in March 2002); Exhibit 33F/9 (the claimant failed to show up to an appointment at the pain clinic on May 28, 2004 because he was out of state); and Exhibit 33F/9 (the claimant was out of town on June 24, 2004, due to return July 20, 2004). In addition, I note my prior decision, where I highlighted numerous inconsistent statements by the claimant regarding his substance abuse, which undercut his credibility. Further I note that, at the same time the claimant was alleging disability, he received unemployment benefits through the date of his last insured. The record indicates that his unemployment benefits ended on May 21, 2003. To qualify for unemployment, an applicant must attest that he is physically able to work, available for work, and actively seeking suitable work. RCW 50.20.010. The receipt of unemployment benefits is therefore inconsistent with an allegation of disability.

Before ending the hearing, I told the claimant's attorney that I would allow him the opportunity to submit additional evidence from Dr. Morantes, explaining the basis of her functional assessment. Instead, the claimant's attorney submitted a letter and an impairment questionnaire from the claimant's current primary care physician. In the letter, George Ioannou, M.D., reported that the claimant had cirrhosis at least since July 3, 2003 and was diagnosed with hepatocellular carcinoma in December 2006. Dr. Ioannou opined that the claimant could lift 20 to 50 pounds occasionally, carry 5 to 10 pounds occasionally, stand/walk two hours in an eight-hour workday, and sit three hours in an eight-hour workday. He stated that these limitations described the claimant's condition for the period beginning in June 2006. The claimant's attorney also submitted evidence from February 2007 indicating that the claimant was undergoing chemoembolization cancer therapy.

---

[2] The transcript of Dr. Nelp's testimony mistakenly refers to cirrhosis as psoriasis. (*See*, *e.g.*, AR 568.) From the context, it is obvious this is a scrivener's error.

> I find Dr. Ioannou's opinion irrelevant, as the issue is the claimant's medical condition through his date last insured – March 31, 2003. Dr. Ioannou stated that the claimant had cirrhosis at least since July 3, 2003, which is after the expiration of the date last insured and therefore consistent with Dr. Nelp's testimony. Second, Dr. Ioannou admitted that his functional restrictions only applied for the period starting in December 2006, which is well after the expiration of the claimant's date last insured.
>
> Additionally, while it is true that the claimant has hepatocellular carcinoma and is undergoing chemotherapy, I find no evidence to show that he had hepatocellular carcinoma through the date last insured. In fact, Dr. Ioannou stated that the claimant was diagnosed with hepatocellular carcinoma in December 2006, which is well after the expiration of the claimant's date last insured. Accordingly, the claimant's hepatocellular carcinoma is irrelevant to the period at issue.

(AR 32-33; one footnote bracketed; some internal citations to record and one footnote omitted.)

Plaintiff first takes issue with Dr. Nelp's rejection of Dr. Morantes's opinion based on the check-box nature of her March 24, 2003 questionnaire. He asserts that the questionnaire contains some narrative explanations and notes the specific reference to the "attached Hepatology notes[,]" (AR 275-80), as well as the inclusion of all of Dr. Morantes's and the other VA treatment notes in the record. Plaintiff argues that the ALJ may not reject a treating physician's opinions simply because they are contained on a questionnaire. *See Smolen*, 80 F.3d at 1288 (stating that "the use of leading, hypothetical questions to elicit expert opinions is entirely appropriate[,]" and noting that one physician's yes-or-no answers to such questions were accompanied by explanatory comments and that, while another physician's answers were not similarly supported, the ALJ was still required to provide clear and convincing reasons for rejecting that treating physician's opinions and that, if the ALJ thought he needed to know their basis, he had a duty to further develop the record by conducting an appropriate inquiry). He asserts that a treating doctor's opinions are generally entitled to controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007) ("If a treating physician's opinion is 'well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight.'"; a finding that the opinion is not so supported or is inconsistent with the record "'means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.'") (quoting 20 C.F.R. § 404.1527(d)(2) and Social Security Ruling (SSR) 96-2p).

Plaintiff also contests Dr. Nelp's criticisms as to a lack of objective evidence, his reported activities, and the official diagnosis of cirrhosis through a biopsy. He asserts that objective evidence in the form of a biopsy is not required to establish cirrhosis, especially when Dr. Ioannou also believed in the existence of cirrhosis and, hence, ordered the biopsy prior to plaintiff's DLI. (*See* AR 274-275, discussed *supra*.) Plaintiff asserts that the ALJ never evaluated Dr. Ioannou's early opinions, focusing solely on his opinions after the DLI. (*See* AR 33.) He further asserts that Dr. Morantes's findings of abdominal pain and fatigue resulting in more than three absences a month and frequent concentration deficits (AR 275) are consistent with the VA's finding of disability due to hepatitis and cirrhosis with resulting pain and fatigue. Plaintiff maintains that there is no evidence that his behavior on three trips out of state was inconsistent with his claimed limitations and the opinions of Dr. Morantes. *See Tackett v. Apfel*, 180 F.3d 1094, 1103 (9th Cir. 1999) (given the absence of details, such as the number and duration of rest stops and information as to the claimant's positioning, evidence of a four-day road trip alone was insufficient to counter medical opinions as to the need to shift positions every thirty minutes or so). He also notes his testimony that he sought alternative medical treatments during that travel. (AR 546).

The Commissioner argues that the ALJ appropriately relied on Dr. Nelp's testimony, including, *inter alia*, his opinion that the April 2003 liver biopsy showed "very minimal

Hepatitis[]" and that "functionally and anatomically," plaintiff had "early stage disease at that time." (AR 32, 568.) (*See also* AR 285, 390 (reflecting results of liver biopsy).) He also argues that, in discounting Dr. Morantes's opinions, the ALJ appropriately pointed to, among other things, the check-box nature of Dr. Morantes's form, a lack of supportive objective medical evidence, and plaintiff's activities. *See, e.g., Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004) (a treating physician's opinions may be discounted when it is "in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of [the claimant's condition], and was based on [the claimant's] subjective descriptions of pain[,]" as well as when that opinion is "conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings[.]"); *Moran v. Commissioner*, 169 F.3d 595, 601-02 (9th Cir. 1999) (recognizing relevance of activities conflicting with a physician's opinions). The Commissioner additionally points to the ALJ's credibility assessment, noting the ALJ's reliance on plaintiff's inconsistent statements regarding his substance abuse, his receipt of unemployment benefits while he was alleging an inability to work, and his traveling, and asserts the relevance of the traveling to plaintiff's believability, rather than his ability to work on a sustained basis. (AR 31-32, 59-60.)

The Commissioner notes that the ALJ gave plaintiff the opportunity to submit additional evidence from Dr. Morantes, but that he instead submitted evidence from Dr. Ioannou consistent with Dr. Nelp's testimony. (AR 33, 513-19.) He describes Dr. Ioannou's more recent opinions as "highly probative." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) ("A treating physician's most recent medical reports are highly probative.") The Commissioner argues that, while Dr. Ioannou may have earlier suspected plaintiff had cirrhosis, later objective evidence

confirmed that his liver disease was in the early stages (AR 285, 390), as opined by Dr. Nelp (AR 568), and that Dr. Ioannou later opined that the functional assessments he assessed were applicable to a period well after plaintiff's DLI (AR 518 (stating functional limitations were applicable from June 2006)). He asserts that the mere fact that plaintiff may have had a medically determinable impairment prior to his DLI is not sufficient to establish that his problems were so severe as to be disabling, and that "'any deterioration in [his] condition subsequent to [the period of eligibility] is, of course, irrelevant[.]'" *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 (9th Cir. 1971)).

In reply, plaintiff counters that the Commissioner's description of Dr. Ioannou's 2006 opinions as highly probative is illogical given that the issue is his condition prior to his DLI of March 31, 2003. Plaintiff avers that he does not dispute the findings related to Dr. Ioannou's later opinions and, instead, points to Dr. Ioannou's earlier, March 2003 opinion as to his liver disease. (AR 274.) He also points to his testimony as to his limited daily activities. (AR 552-54.)

Although she repeatedly references plaintiff's chronic abdominal pain and fatigue in response to questioning, Dr. Morantes's March 2003 questionnaire does lack substantive narrative discussion. (*See* AR 276-77, 279.) Also, while the record contains Dr. Morantes's treatment notes and she refers to attached hepatology notes in the questionnaire, plaintiff does not point the Court in the direction of notes specifically supporting Dr. Morantes's answers on the questionnaire or the hepatology notes referenced. Nor does plaintiff point to timely objective evidence supporting Dr. Morantes's opinions, instead pointing to diagnoses of cirrhosis, or possible cirrhosis, prior to the later biopsy.

Additionally, it was not inappropriate for the ALJ to rely, in part, on plaintiff's three

separate out of state trips as evidence generally suggesting a fairly high level of functioning. *Cf*. *Tackett*, 180 F.3d at 1103 (finding a single road trip alone insufficient to counter opinions as to the need to shift positions every thirty minutes or so). As noted by the Commissioner, the ALJ also relied on this travel and other issues, such as plaintiff's inconsistent statements regarding his substance abuse, in finding plaintiff less than fully credible.

In contrast to Dr. Morantes's diagnosis of hepatitis C/cirrhosis in late March 2003 (AR 275) and Dr. Ioannou's early March 2003 concerns as to advanced liver disease (AR 274), Dr. Nelp testified that the early April 2003 biopsy revealed only minimal changes and early stages of hepatitis C (AR 568). Plaintiff had the opportunity following this testimony to obtain additional evidence from Dr. Morantes. However, he instead submitted evidence from Dr. Ioannou that failed to contradict Dr. Nelp's testimony. It is significant that, although Dr. Ioannou earlier suspected advanced liver disease prior to plaintiff's DLI, he later failed to reiterate that finding, instead stating that plaintiff "has had cirrhosis at least since 7/3/2003 because a CT scan . . . showed changes that are consistent with cirrhosis[,]" and clarified that the limitations identified on his questionnaire dated back only to June 2006. (AR 518-19.)

The Court concludes that the ALJ's take on the evidence was rational. That is, the ALJ appropriately relied on Dr. Nelp's testimony in discounting the pre-DLI evidence from Drs. Morantes and Ioannou.

<u>RFC</u>

RFC is the most a claimant can do considering his or her limitations or restrictions. SSR 96-8p. Pursuant to SSR 96-8p:

Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work

activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

(emphasis in original). This ruling further provides that the RFC assessment must include a "function-by-function" assessment of a claimant's abilities. SSR 96-8p.

Plaintiff argues that the ALJ erred by failing to discuss his ability to perform sustained work activity, as required by SSR 96-8p. *Reddick v. Chater*, 157 F.3d 715, 724-25 (9th Cir. 1998) (ALJ erred in failing to address claimant's ability to undertake sustained work activity; finding the ALJ's RFC finding not supported by substantial evidence in failing to account for the effects of the claimant's fatigue on her ability to function in the workplace). He asserts that his complaints of fatigue and pain would obviously interfere with his ability to perform sustained work activity, noting Dr. Morantes's finding of frequent deficiencies in concentration, with fluctuating good and bad days. (AR 279.)

Plaintiff asserts error in the ALJ's RFC assessment generally given the improper rejection of all of the limitations assessed by Dr. Morantes in favor of the opinions of Dr. Nelp. In particular, he notes the ALJ's failure to consider his negative reactions to stress, as identified by Dr. Morantes. (AR 279.)

Plaintiff also asserts that the ALJ failed to address the statement from his former employer, Michael Zatine, about his inability to work full time on a regular and continuing basis. Zatine noted that plaintiff was terminated in July 2002 given the reduction in his hours to approximately twenty hours a week, stating "there was no way of knowing from one day to the next, if he would be able to get up and come to work." (AR 186.) Plaintiff argues that the ALJ erred in failing to

address this significant probative evidence. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ must explain why significant probative evidence has been rejected). He further argues that the RFC-related errors implicate the ALJ's step four conclusion that he can perform his past relevant work.

However, as argued by the Commissioner, plaintiff fails to demonstrate reversible error. The ALJ in this case incorporated into his May 2007 decision his October 2005 decision as a discussion and summary of the evidence. (AR 28, 32, 55-62.) Noting that the Appeals Council did not disturb his earlier evaluation of the medical evidence, he declined to reevaluate that evidence on remand and, after following the Appeals Council's directives and discussing new evidence submitted, adopted the RFC set forth in his earlier decision. (AR 32, 34.) The ALJ did not, in either of the decisions, specifically spell out plaintiff's ability to work on a sustained basis. However, he found plaintiff capable of light work and assessed plaintiff's various functional abilities per hour, per day, and, in so finding, specifically acknowledged that plaintiff's severe impairments limited his functioning "in large part due to fatigue." (AR 61.) This acknowledgment distinguishes this case from *Reddick*, wherein the Ninth Circuit Court of Appeals found that the ALJ ignored the claimant's fatigue, the key symptom of her established chronic fatigue syndrome, and relied almost exclusively on the reports of two examining physicians neither of whom addressed the claimant's fatigue. 157 F.3d at 724-25. As asserted by the Commissioner, the Ninth Circuit in *Reddick* did not find that an RFC finding is per se deficient without an explicit statement as to sustained work activity. Instead, the Ninth Circuit related its finding as to the ALJ's failure to address the claimant's ability to undertake sustained work activity specifically with the failure to account for the effects of fatigue. *Id*. In this case, it can be said that the ALJ

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -17

properly considered plaintiff's RFC in accordance with SSR 96-8p.

Nor do plaintiff's other arguments withstand scrutiny. As discussed above, the ALJ adequately supported his decision to discount the opinions of Dr. Morantes. Also, while the ALJ did not address the lay statement from Zatine in his May 2007 decision, he did address it in his October 2005 decision. (AR 60.) Plaintiff notes that the prior decision was vacated by the Appeals Council and that the ALJ did not specifically adopt all of his previous findings, he incorporated the prior decision into the record as a discussion and summary of the evidence. (AR 28.) Technically, plaintiff is correct. However, a plain reading of the ALJ's May 2007 decision reflects his incorporation of the prior findings as a whole and the failure to reiterate the specific finding as to Zatine can appropriately be considered harmless.

## Past Relevant Work

Plaintiff also raises an additional argument related to the ALJ's step four finding. He notes that, pursuant to SSR 82-62, an ALJ's step four finding must contain specific findings of fact as to: (1) the individual's RFC; (2) the physical and mental demands of the past work; and (3) whether the individual's RFC would permit a return to his or her past work. Plaintiff asserts that the ALJ failed to discuss the demands of his past work, noting only a reference to light work with a SVP (specific vocational preparation) level of 6. (AR 34.) He asserts that the absence of the findings required by SSR 82-62 mandates reversal. *Sivilay v. Apfel*, 143 F.3d 1298, 1299 (9th Cir. 1998) (vacating decision for misapplication of SSR 82-61 and 82-62; remanding for investigation of demands of claimant's past relevant work as compared to RFC).

Again, however, plaintiff fails to demonstrate reversible error. In his May 2007 decision, the ALJ referenced the vocational expert's testimony at the prior hearing as to plaintiff's past

relevant work as a car salesman and his opinion that plaintiff could return to that work. (AR 34.) The ALJ concluded: "Because I find that the claimant's residual functional capacity is the same as that set forth in the prior October 2005 decision, I will adopt the vocational expert's testimony at the prior hearing." ( *Id.*) In the October 2005 decision, the ALJ stated: "According to [plaintiff's] own report, in [the car salesman position] he lifted less than 10 pounds, walked for three hours in an eight hour workday, stood for one, and sat for one." (AR 62 (citing AR 175).) After restating his RFC findings, the ALJ concluded: "Because the claimant's exertional abilities exceed those required of his past relevant work, as he described performing it, I find that the claimant is capable of performing his past relevant work as a car salesman." (AR 62.) These findings satisfy the requirements of SSR 82-62, which indicates that the claimant is the "primary source" for information as to the demands of his or her past relevant work. The ALJ's May 2007 decision can be read to incorporate all of his previous step four findings and the failure to specifically reiterate all of those findings can appropriately be considered harmless.

## **CONCLUSION**

For the reasons set forth above, this matter should be affirmed.

DATED this 22nd day of July, 2008.

/s/ Mary Alice Theiler
Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -19